**Charles E. MIFFLETON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 626–87.**

Court of Criminal Appeals of Texas, En Banc.

May 24, 1989.

Rehearing Denied June 28, 1989.

Charles O. Grigson, Austin, for appellant.

Ken Oden, County Atty., Alia Moses, Asst. County Atty., Austin, and Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BERCHELMANN, Judge.

Appellant, Charles E. Miffleton, was indicted for the misdemeanor offense of driving while intoxicated. Tex.Rev.Civ.Stat. Ann. art. 6701*l*–1. After trial to the court, appellant was found guilty as indicted, which resulted in appellant's second conviction for driving while intoxicated. The court imposed a probated sentence of one year's confinement in the county jail in addition to a fine of one thousand dollars, and suspended appellant's driver's license for two years. The Court of Appeals for the Third Supreme Judicial District affirmed appellant's conviction. *Miffleton v. State*, 728 S.W.2d 880 (Tex.App.—Austin, 1987). We granted appellant's petition for discretionary review to determine whether the court of appeals erred in holding that: 1) appellant was not denied his federal and state constitutional right to consult with counsel prior to performing a videotaped sobriety test, and 2) appellant was not denied his federal and state privilege against self-incrimination by the trial court's admission of a videotaped sobriety test of appellant, which was taken after appellant requested an attorney.

Austin Police Officer Tyna Lynn Rodriguez testified at appellant's trial that she observed appellant's automobile speed away from an intersection and subsequently weave back and forth within his lane. When Officer Rodriguez stopped appellant's vehicle, appellant had difficulty exiting his automobile and mumbled when he spoke. Appellant was initially belligerent and uncooperative with Officer Rodriguez. Six beer cans were found in appellant's car; four were unopened, one was empty, and the other half empty.

Over objection,[1] the trial court admitted into evidence a videotape taken of appellant at the police station. Apparently, the court listened to the audio portion of the tape, as well as viewing the videotape. A review of the videotape reveals that appellant requested an attorney before he agreed to perform physical agility tests. Appellant's girlfriend testified at trial that appellant is inherently somewhat uncoördinated, and that appellant's physical behavior depicted in the videotape is consistent with appellant's behavior when sober.

## I.

■ Appellant's first ground for review complains of a denial of his right to counsel prior to performing videotaped sobriety tests. The physical agility tests were administered immediately upon appellant's arrival to the police station, and before a complaint was filed against appellant. Appellant urges a violation of both state and federal constitutional provisions. When we granted appellant's petition for discretionary review, this Court had already decided that a defendant's right to counsel under the Sixth Amendment to the United States Constitution does not attach until the time a complaint is filed. *Forte v. State*, 707 S.W.2d 89 (Tex.Cr.App.1986) (remanded on other grounds). After reaching this con-

clusion, we remanded *Forte* for the court of appeals to apply a state law analysis of the right to counsel claim. Thereafter, we affirmed the lower court's opinion on remand and held that a defendant's right to counsel under Art. I, Sec. 10, of the Texas Constitution also does not attach until the time the complaint is filed. *Forte v. State*, 759 S.W.2d 128 (Tex.Cr.App.1988). Although the *Forte* decisions deal with a defendant's right to consult with an attorney prior to taking a breath test, they are dispositive of appellant's ground for review which complains of his inability to consult with counsel prior to being videotaped performing sobriety tests. Because appellant's right to counsel did not attach until the time the complaint was filed, he was not entitled to consult with an attorney prior to performing the videotaped sobriety tests. Accordingly, appellant's first ground for review is overruled.

## II.

Appellant's second ground for review advances a federal and state law claim of self-incrimination concerning the admission of the videotaped sobriety test filmed after appellant requested an attorney. Integral to appellant's contention is the proposition that a videotape of a sobriety test is tantamount to compelled testimony, as denounced in the Fifth Amendment to the United States Constitution and Art. I, Sec. 10, of the Texas Constitution. The court of appeals held that the visual portions of the videotape were not testimonial in nature and therefore did not impinge upon either the federal or state privileges against self-incrimination.

The Fifth Amendment prohibition against self-incrimination, applicable to the states through the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489,

---

1. The state urges that appellant's objection referring to Art. I, Sec. 10, of the Texas Constitution is too broad-based to preserve the specific error of self-incrimination embodied within the numerous protections set forth in Art. I, Sec. 10. However, it is apparent from the context that appellant was invoking the state privilege against self-incrimination. *Zillender v. State*, 557 S.W.2d 515 (Tex.Cr.App.1977) (general ob-

jection is sufficient where the specific ground is apparent from the context). See also Rule 103(b) Tex.R.Crim.Evid. This is evidenced in the trial court's overruling of appellant's objection, "The objection under—and I mean these rulings to apply to their Texas Constitutional analogues. The objection under the Fifth Amendment is overruled because it is not testimonial evidence."

12 L.Ed.2d 653 (1964), states in pertinent part:

No person ... shall be compelled in any criminal case to be a witness against himself ...

U.S. Const. amend. V.

The Texas constitutional counterpart to the Fifth Amendment provides:

In all criminal prosecutions the accused shall ... not be compelled to give evidence against himself ...

Tex. Const. art. I, § 10.

In order to protect the privilege against compulsory self-incrimination, the Supreme Court announced procedural requirements for custodial interrogation of criminal suspects. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Under such circumstances and prior to police questioning, a suspect must be warned of his right to remain silent, that any statement made may be used against him and that he has the right to an attorney, either retained or appointed. The Supreme Court reasoned that these warnings were necessary as a prophylactic device to protect the privilege against compulsory self-incrimination "to assure the exercise of the right will be scrupulously honored ..." *Id.*, at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. Moreover, *Miranda* requires that when a suspect indicates a desire to consult with an attorney, police questioning must cease.

Interpreting the privilege against self-incrimination, the Supreme Court held that forceably extracting a blood sample from a driving while intoxicated suspect who refuses to consent upon the advice of counsel does not violate the Fifth Amendment. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Therein, the Supreme Court determined that a blood sample is not testimonial in nature, but rather constitutes real or physical evidence which does not violate the Fifth Amendment. *Id.*, at 764, 86 S.Ct. at 1832, 16 L.Ed.2d at 916. See also *South Dakota v. Neville*, 459 U.S. 553, 559, 103 S.Ct. 916, 920, 74 L.Ed.2d 748, 756 (1983). The Supreme Court noted that the Fifth Amendment typically "offers no protection against compulsion to submit to finger-printing, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." *Schmerber*, 384 U.S. at 764, 86 S.Ct. at 1832, 16 L.Ed.2d at 916 (footnote omitted).

Analogizing a blood sample in *Schmerber* to the collection of a breath sample, this Court held that breath samples are not testimonial communication protected by the Fifth Amendment. *Rodriguez v. State*, 631 S.W.2d 515, 517 (Tex.Cr.App.1982). Additionally, this Court held that when a defendant invokes his right to counsel under *Miranda* the police are not forbidden from seeking a suspect's breath sample because "[n]ot only does the breath testing decision not involve custodial interrogation, it does not involve the privilege against self-incrimination." *McCambridge v. State*, 712 S.W.2d 499, 506 (Tex.Cr.App. 1986) (remanded on other grounds).

Likewise, in *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the Supreme Court held that taking a defendant's handwriting exemplar did not violate his Fifth Amendment privilege against self-incrimination because a "mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection." *Id.*, at 266–67, 87 S.Ct. at 1953, 18 L.Ed.2d at 1183 (citation omitted). Addressing Art. I., Sec. 10, this Court likewise reasoned that a handwriting exemplar was not testimonial in nature and did not offend the state privilege against self-incrimination. *Olson v. State*, 484 S.W.2d 756 (Tex.Cr.App.1969).

Analyzing whether communication is "compelled," the Supreme Court held that the Fifth Amendment does not prohibit admission of evidence of a defendant's verbal refusal to take a blood-alcohol test. *Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748. "[R]efusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." *Id.*, at 564, 103 S.Ct. at 923, 74 L.Ed.2d at 759. This Court has also held that a defendant's

verbal refusal to submit to a breath test does not fall within the state privilege against self-incrimination where the defendant is not physically or mentally compelled to refuse the test. *Thomas v. State*, 723 S.W.2d 696 (Tex.Cr.App.1986).

### The Video Portion of the Tape

■ In the instant case, appellant separately complains of the admission of the audio and the visual portions of the videotape. Turning to the visual depictions of appellant's sobriety test, we conclude that the videotape is not testimonial in nature and therefore does not offend the Fifth Amendment privilege against self-incrimination. Applying a Fifth Amendment analysis, we find no meaningful distinction between obtaining a film of a defendant performing a sobriety test and obtaining a sample of breath, blood, urine, or handwriting, or submitting a defendant to fingerprinting, photographing, or measurements.[2] The taped depictions provide nothing more than what the police officers saw and could have testified to at trial. Put simply, the evidence of the circumstances surrounding appellant's sobriety test was admissible; therefore, the visual recording of the test was also admissible.

■ However, our inquiry does not end here. Appellant raises the identical claim of admitting the visual portion of the videotape under the privilege against self-incrimination embodied in the Texas Constitution. Specifically, appellant contends that the language of Art. I, Sec. 10, of the Texas Constitution requiring that no defendant be compelled "to give evidence against himself" provides broader protection than that of the Fifth Amendment stating that no defendant be compelled "to be a witness against himself." We disagree.

An identical claim was raised and rejected in *Olson*, 484 S.W.2d 756. In *Olson*, where the defendant was compelled to give a handwriting exemplar, he argued that the

distinction between the language of the Fifth Amendment and Art. I, Sec. 10, of the Texas Constitution mandated a greater state law safeguard against self-incrimination. After analyzing the historical nature of the state privilege against self-incrimination, this Court declined to interpret that portion of Art. I, Sec. 10, of the Texas Constitution more broadly than the Fifth Amendment.

> After much study and research, we conclude that Article I, § 10, is declaratory of the common law, and that it was the intent of the framers of our constitutional privilege to provide the citizens of this state with a safeguard similar to that contained in the Fifth Amendment. We adopt the view that the Texas constitutional self-incrimination privilege extends its protection to testimonial compulsion. *Olson*, 484 S.W.2d at 772.

Likewise, this Court recently rejected an identical challenge regarding differences in language between Art. I, Sec. 10, and the Fifth Amendment. *Thomas*, 723 S.W.2d 696. However, we noted in *Thomas* that in interpreting the meaning of the privilege against self-incrimination under our state constitution, the final determination of the scope of the privilege must come from this Court, although Supreme Court opinions will be given weight in reaching the determination. *Id.*, 723 S.W.2d at 702. We reject appellant's claim that Art. I, Sec. 10, provides broader protection than the Fifth Amendment merely because of differences in language. See *Id.*, 723 S.W.2d at 703; *Olson*, 484 S.W.2d at 772.

In applying an independent analysis of appellant's claim under state law, we conclude that admission of the visual portion of the videotaped sobriety test did not offend the Texas constitutional privilege against self-incrimination because the videotape was not compelled testimony. Long before the Fifth Amendment became applicable to the states, this Court interpreted Art. I, Sec. 10, to allow "moving pictures"

---

**2.** Federal precedent interprets the privilege against self-incrimination to apply only to "compelled testimony." *Schmerber*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. Because we find the visual depictions on the videotape do not

amount to "testimony" within the ambit of the Fifth Amendment, we express no opinion as to whether the sobriety test was "compelled" from appellant. See also infra note 3.

of a driving while intoxicated defendant being booked into jail over his objections of self-incrimination. *Housewright v. State,* 154 Tex.Crim. 101, 225 S.W.2d 417 (App. 1949). Therein we stated:

Evidently the witnesses could delineate the peculiarities of [the defendant] at the scene of the alleged offense and his demeanor and actions in order to give a basis of their opinions as to his intoxicated condition; and it seems to us to be but a clearer delineation of what they saw and described to the jury if such a scene could thus be shown by a series of pictures taken immediately after his apprehension instead of the eyewitnesses testifying only from memory.

*Id.,* 225 S.W.2d at 418.

Similarly, in *Carpenter v. State,* 169 Tex. Crim. 283, 333 S.W.2d 391 (1960), we again held that the state privilege against self-incrimination was not violated where "motion pictures" were admitted into evidence that depicted the driving while intoxicated defendant at the time he was overtaken on the road. Appellant argues that *Carpenter* and *Housewright* are distinguishable because they did not involve sobriety tests given under compulsion. We do not find appellant's argument persuasive.

The state privilege against self-incrimination, like its federal counterpart, applies to testimonial compulsion. *Olson,* 484 S.W.2d at 772. See also *McCambridge,* 712 S.W.2d 499. We find that visual depictions of a defendant performing sobriety tests do not constitute "testimony" as prohibited by the state privilege against self-incrimination.[3] *Olson,* 484 S.W.2d 756; *Carpenter,* 333 S.W.2d 391; *Housewright,* 225 S.W.2d 417. We held in *McCambridge,* 712 S.W.2d 499, that when a suspect invokes his right to an attorney under *Miranda,* the police are not forbidden from seeking the suspect's breath sample. Likewise, we conclude that when a suspect invokes his right to counsel under *Miranda,* the police are not prohibited from obtaining video recordings of the suspect performing sobriety tests. Visual depictions of a suspect's physical condition, like samples of blood, breath, or handwriting, are not testimonial in nature and do not fall within the federal or state privileges against self-incrimination.

### *The Audio Portion of the Tape*

■ Lastly, appellant urges that the trial court erred in admitting into evidence the audio portion of the tape because it constituted compelled testimony contrary to the federal and state privileges against self-incrimination. The Court of Appeals held that the trial court should have suppressed the audio portion of the videotape because appellant requested an attorney before and during the videotaping. The court of appeals did not find error, however, because it presumed that because trial was to the court. "[T]he trial judge did not construe appellant's assertion of his rights as evidence of guilt; indeed, a trial judge is generally presumed to disregard any inadmissible evidence. *Rodriguez v. State,* 442 S.W.2d 376, 378 (Tex.Cr.App.1969)." *Mifleton,* 728 S.W.2d at 884.

However, appellant does not limit his argument to the tape recording of his request for an attorney. He argues that recorded statements made after he requested an attorney, particularly those involving the sobriety test, should have been suppressed at trial.

For purposes of the *Miranda* rules, we hold that the audio portion of the tape should have been suppressed at trial to the extent that it contained compelled testimony given in response to custodial interrogation. It is uncontested that the videotape was taken in a custodial setting. Therefore, the audio portion of the tape is admissible only where it does not include compelled testimony resulting from interrogation. *Jones v. State,* 742 S.W.2d 398, 407 (Tex.Cr.App.1987).

Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than

---

**3.** Because we hold that the visual portion of the videotape is not testimony within the scope of the state privilege against self-incrimination, we need not address whether the sobriety test was, in this case, given under compulsion. See supra note 2.

those normally attendant to arrest or custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297, 308 (1980). As this Court described it, when officers statements are designed to elicit incriminating statements from a defendant, it is interrogation. *Ochoa v. State*, 573 S.W.2d 796, 801 (Tex.Cr.App.1978).

However, appellant waived his right to trial by jury and proceeded to trial before the court. It is a well-established rule that, under such circumstances, appellate courts are to apply the presumption that the trial judge disregarded any inadmissible evidence presented at trial. *Keen v. State*, 626 S.W.2d 309 (Tex.Cr.App.1981); *Ex parte LeBlanc*, 615 S.W.2d 724 (Tex.Cr.App.1981). *Hattersley v. State*, 487 S.W.2d 354 (Tex.Cr.App.1972), *cert. denied*, 411 U.S. 932, 93 S.Ct. 1900, 36 L.Ed.2d 391 (1973); *Larocca v. State*, 479 S.W.2d 669 (Tex.Cr.App.1972); *Atkins v. State*, 423 S.W.2d 579 (Tex.Cr.App.1968); *Milligan v. State*, 170 Tex.Crim. 584, 343 S.W.2d 455 (1961); *Arnold v. State*, 161 Tex.Crim. 344, 277 S.W.2d 106 (1955). See also *Tolbert v. State*, 743 S.W.2d 631 (Tex.Cr.App.1988), and cases cited therein. This is also the rule in the federal system. *United States v. Impson*, 562 F.2d 970 (5th Cir.1977), *cert. denied*, 434 U.S. 1050, 98 S.Ct. 900, 54 L.Ed.2d 803 (1978). Moreover, appellant has the burden of demonstrating that the trial court relied upon inadmissible evidence in reaching its verdict or determining punishment. *Angelle v. State*, 571 S.W.2d 301 (Tex.Cr.App.1978).

Appellant urges that the following three statements made by the trial court affirmatively establish that the court relied upon inadmissible portions of the audio in reaching its determination of appellant's guilt.

> ... I made a note of it that there was no swaying whatsoever at first when he was just standing there talking to the officer about what was going on.

> \*   \*   \*   \*   \*   \*

> According to my notes, he couldn't stand on either leg and didn't do the counting right either.

> \*   \*   \*   \*   \*   \*

This case, if it were a celebrated case, would quickly become known as "The Klutz Case." All you have to do is prove that the defendant can't stand on one leg, walk a straight line, touch his nose, and read and count normally, and then you have an absolute defense to the charge of DWI ever, under any circumstances.

■ After , thoroughly reviewing the record and considering these statements in context, we conclude that appellant fails to demonstrate that the trial judge relied upon any inadmissible portions of the audio recording. The first above-quoted passage merely indicates a point of reference in the tape relating to the visual depiction of appellant when he was not swaying. In no way does this support appellant's contention that the trial court relied upon compelled testimony resulting from custodial interrogation in determining appellant's guilt.

The second portion reflects that according to the judge's notes the appellant was unable to stand on either leg and had difficulty counting. Placed in context, the judge's mere reference to appellant's counting fails to establish that the court relied upon compelled testimony resulting from interrogation. Defense counsel urged in closing argument that the prosecution failed to establish that appellant was intoxicated beyond a reasonable doubt. The following exchange took place.

> THE COURT: Could you point out to me any sobriety test on the video that he passed?

> [COUNSEL]: Your Honor, as far as passing a test, the evidence in the case shows what he did on the video. I don't know what passing or failing is. I know that he stood on his foot without much of a problem and counted from 30 on down. On his right foot he couldn't stand on that one. He had told the officer, based on the video. What he says is that he couldn't walk in the triangle.

THE COURT: According to my notes, he couldn't stand on either leg and didn't do the counting right either.

The trial court's single reference to appellant's counting, without more, does not overcome the presumption that the court disregarded compelled testimony resulting from interrogation. The visual portions of the tape demonstrated that appellant staggered when attempting to walk a triangular area marked on the floor, and further showed that appellant was unable to stand on one leg. Officer Rodriguez testified to appellant's abrasive behavior, his difficulty in exiting his vehicle, and his mumbled speech, in addition to his erratic driving. The trial judge found the evidence clearly sufficient to support a finding of guilt. He stated, "In a way I wish you had gone ahead and gone to a jury in this case because I think it would probably take them about the length of time it would take to elect a foreman." Appellant fails to establish that the trial court relied upon any compelled testimony resulting from custodial interrogation in determining appellant's guilt.

Likewise, the final referenced statement from the trial judge does not advance appellant's contention. Instead, it responds to the defensive theory that appellant is naturally uncoordinated, and thus is incapable of ever performing sobriety tests.

In the absence of a clear showing that the trial court considered impermissible portions of the tape, we apply the presumption that the trial court did not consider any compelled testimony resulting from interrogation. *Keen*, 626 S.W.2d 309. See also *Tolbert*, 743 S.W.2d 631.

Accordingly, the judgment of the court of appeals is affirmed.

CLINTON, TEAGUE, MILLER and DUNCAN, JJ., concur in the result only.