In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-01-00419-CR

____________


PETER HALLIDAY HEWETT, Appellant


V.


THE STATE OF TEXAS, Appellee







On Appeal from County Court at Law No. 7

 Harris County, Texas

Trial Court Cause No. 1023351. 






O P I N I O N

 A jury found appellant guilty of the misdemeanor offense of driving while
intoxicated ("DWI"). The trial judge assessed punishment at 180 days in jail,
suspended the sentence, and placed appellant on community supervision for 18
months. The trial judge also fined appellant $800. We affirm.FACTS

 On September 27, 2000, Houston Police Officer Morton observed appellant
driving a vehicle at a high rate of speed; his radar confirmed that appellant's vehicle
was traveling at a speed of 57 miles-per-hour in a 35 miles-per-hour zone. Officer
Morton pursued appellant's vehicle, observed appellant switch lanes without
signaling, and signaled appellant to pull-over. He then approached appellant, and he
asked for appellant's driver's license and proof of insurance. While appellant was
obtaining his license, Officer Morton smelled a strong odor of alcohol coming from
appellant and observed that appellant had glassy, bloodshot eyes and a raspy voice. 
He also saw that appellant had difficulty handling his proof of insurance. Appellant
explained to Officer Morton that he was coming from a restaurant and had not been
drinking.

 Officer Morton then asked appellant to step out of the vehicle and asked
appellant if he was suffering from any type of medical condition. Appellant said no
he was not. The officer then conducted an Horizontal Gaze Nystagus test ("HGN")
on appellant. Appellant performed poorly on the HGN, which indicated to Officer
Morton that appellant was intoxicated. Officer Morton then asked appellant to return
to his car while he called for another officer with a videotape camera to come and
record appellant's sobriety tests.

 Houston Police Department Officer Pierce responded to Officer Morton's
call and began video-taping appellant. When Officer Pierce asked appellant to exit
the vehicle, he smelled an alcoholic odor coming from appellant, observed appellant's
glassy eyes and impaired balance. In response to Pierce's question about his medical
condition, appellant stated that he had an astigmatism. Officer Pierce stated that
appellant had difficulty following his instructions on the HGN, which indicated to
him that appellant was intoxicated. Officer Pierce administered four more field
sobriety tests, which again led him to conclude that appellant was intoxicated.

 Appellant was arrested and taken to "central intox," where he refused a
request that he take a Breathalyzer test. Houston Police Officer Bellamy then
conducted an additional HGN on appellant. Appellant's performance on this HGN,
combined with a strong odor of alcohol on his appellant's breath, slow, slurred
speech, and bloodshot eyes indicated to the officer that appellant was intoxicated. 

 Houston Police Sergeant Robinson also conducted an HGN on appellant,
which indicated that appellant was intoxicated. Appellant's performance on the
speech, eyes, and balance tests also indicated to Robinson that appellant was
intoxicated.


FACTUAL SUFFICIENCY

 In his first point of error, appellant contends that the evidence is factually
insufficient to support his DWI conviction based upon a loss of physical and mental
faculties. We apply the usual standard of review. See Johnson v. State, 23 S.W.3d
1, 11 (Tex. Crim. App. 2000).

 Based on the evidence introduced at trial, a jury could have reasonably
found that: (1) appellant was driving at a high rate of speed; (2) appellant smelled of
alcohol; (3) appellant's eyes were glassy and bloodshot, (4) appellant's voice was
raspy; (5) appellant's balance was impaired; (6) appellant had a difficult time
handling his proof of insurance; (7) appellant's performance on the HGN tests
administered by Officers Morton, Pierce, Bellamy, and Sergeant Robinson indicated
that appellant was intoxicated; (8) appellant had a difficult time following Officer
Pierce's instructions; (9) field sobriety tests administered by Office Pierce indicated
that appellant was intoxicated; (10) appellant had equal tracking in both eyes; (11)
appellant was on high blood pressure medication; and (12) appellant's medication
would not invalidate the HGN.

 Appellant's factual sufficiency challenge relies on the testimony of his three
witnesses: (1) Rene Bertrand, an emergency room technician, who is employed by
the City of Houston as a jail medic; (2) Tom Fore, a restaurant owner and appellant's
friend; and (3) Dr. Joseph Citron, appellant's expert witness, an opthamologist, who
testified as appellant's expert witness.

 Bertrand testified that he visited with appellant for about 20 to 25 minutes
after appellant was brought to the police station. Bertrand testified that appellant's
speech was not slurred, he walked normally, his eyes looked fine, he had no
noticeable odor of alcohol, and Bertrand did not see any signs of physical or mental
impairment. Bertrand asked appellant if he was on any medication, had any mental
illness, was physically okay, and had been drinking. Appellant answered "No" to all
of Bertrand's questions.

 Fore, appellant's friend and business associate, testified that he has known
appellant for 30 years and has seen appellant intoxicated several times. After viewing
the State's videotape of appellant on the night in question, Fore stated that appellant
appeared normal and sober. Fore was not with appellant the night that appellant was
arrested. 

 Dr. Citron testified that appellant suffered from both amblyopia and
strabismus. Amblyopia, commonly known as "lazy eye," prevents equal tracking of
the eyes. Dr. Citron also testified that "lazy eye" is visible to a trained observer and
would have been visible on the night of appelant's arrest. Strabismus is a condition
in which the eyes are not coordinated, and it causes the individual to focus using only
one eye at a time. Dr. Citron testified that any results from an HGN test administered
on appellant would be skewed because of appellant's eye conditions. After viewing
the videotape of appellant made the night of his arrest, Dr. Citron concluded that
appellant had not lost the normal use of his mental or physical faculties.

 Based on the testimony of the four police officers that appellant exhibited
signs of intoxication, including an odor of alcohol, bloodshot and glassy eyes, a raspy
voice, impaired balance, and an inability to follow directions, the jury had evidence
of intoxication other than just the HGN tests administered by the officers. The jury
also had an opportunity to view the videotape of appellant performing various field
sobriety tests. We must give due deference to the fact finder's determinations
concerning weight and credibility of the evidence. See Johnson, 23 S.W.3d at 9. We
hold that the evidence is not so overweighed by contrary evidence as to undermine
the confidence in the jury's determination. See King v. State, 29 S.W.3d at 556, 563
(Tex. Crim. App. 2000). 

 We overrule appellant's first point of error.

JURY INSTRUCTION

 In his second point of error, appellant contends that the trial court erred in
refusing to include a jury instruction under Texas Code of Criminal Procedure article
38.23. Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon Supp 2002).

 Appellant argues that an article 38.23 instruction should have been included
in the jury charge because a fact issue existed as to whether appellant consented to
the field sobriety tests. We disagree. 

 There is no requirement that a defendant give his consent before performing
field sobriety tests. Field coordination tests are non-testimonial and do not constitute
custodial interrogation. See Barraza v. State, 733 S.W.2d 379, 381 (Tex.
App.--Corpus Christi) aff'd, 790 S.W.2d 654 (Tex. Crim. App. 1990); Delgado v.
State, 691 S.W.2d 722, 723-24 (Tex. App.--San Antonio 1985, no pet.) Therefore,
no article 38.23 instruction was necessary.

 We overrule appellant's second point of error.

CUSTODIAL INTERROGATION AND INSTRUCTION TO
DISREGARD


In his third and fourth points of error, appellant contends that the trial court
erred in overruling his objection to custodial interrogation and in refusing to instruct
the jury to disregard questions asked of appellant while he was in custody.

 The following occurred during the direct testimony of Officer Bellamy:

 State: . . . Did you have any conversation with
[appellant]?


 Officer: Yes, ma'am.


 . . . . 


 State: Can you tell us the content of that
conversation?


 Officer: Yes, ma'am.


 Appellant: Objection, now he is in custody, clearly, at
this point in time.


 Court: Haven't heard a response. [The State] can ask
him what [Officer Bellamy] asked [appellant].


 Appellant: [Officer Bellamy] shouldn't be asking
[appellant] anything without the predicate in
terms of rights and showing that [it is] an
electronic recording.


 Court: All right. Overruled. She can ask [the
officer] what he asked [appellant].

 . . . . 


 State: Officer, what is it that you asked [appellant]
on that evening?


 Officer: I asked specifically about medical conditions
or problems, medications he was taking or
any prior head injuries.


 State: Why were you asking him this question?


 Officer: Those are the preliminary questions to the
HGN before we give the test.


 State: Okay. What was his response to those
questions?


 Court: No, that's sustained. Are you objecting?


 Appellant: Yes, Your Honor.


 Court: Sustained.


 Appellant: Now that the objection is sustained, I ask that
you instruct the jury to disregard the
questions because it is not relevant.


 Court: No. Let's go.


During the State's re-direct examination of Officer Bellamy, the following
transpired:


 State: Before you performed the HGN test on
[appellant] did he advise you of any medical
conditions?


 Officer: Did he - I'm sorry?


 State: Did he advise you of any medical conditions
that he suffered from?


 Officer: He said he was taking medication.


 State: Do you remember what type of medication he
said he was taking?


 Officer: High blood pressure.


 State: According to your training, will high blood
pressure medicine invalidate a HGN test?


 Officer: No, ma'am.


 State: Did [appellant] inform you of any eye
problems he might suffer?


 Officer: No, ma'am.


 Assuming, without deciding, that the trial judge erred by overruling appellant's
objection to custodial interrogation and by not giving the jury an instruction to
disregard, we hold that any error is harmless. "It is well established that questions
regarding the admission of evidence are rendered moot if the same evidence is
elsewhere introduced without objection; any error in admitting evidence over a proper
objection is harmless if the same evidence is subsequently admitted without
objection." Chamberlain v. State, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999)
(citing McFarland v. State, 845 S.W.2d 824, 840 (Tex. Crim. App. 1992)). Here, the
testimony about which appellant complains came into evidence on cross-examination
without objection. 

 We overrule appellant's third and fourth points of error. The judgment of the trial court is affirmed. 


 Jackson B. Smith, Jr. (1)

 Justice


Panel consists of Justices Mirabal, Taft, and Smith. 

Do not publish. Tex. R. App. P. 47. 
1. The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.